IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                          Cr. No. 21-0706 KG

RAMON JESUS VENEGAS-CORREA,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court following an evidentiary hearing held on November 18, 2021, on Defendant's objection to the Presentence Report (PSR), specifically the application of USSG § 2L1.1(b)(6), which this Court overruled.  The Court considered Defendant's written objection (Doc. 30), the response from the United States (Doc. 31), the testimony, arguments of counsel and the applicable law.  For the reasons stated on the record and that follow herein, the Court concludes the application of Section 2L1.1(b)(6) is correct.

    I.     *Findings of Fact*

With exception to Defendant's objection to the application of § 2L1.1(b)(6), there are no objections to the factual summary in the PSR.  As to the objection, the United States elicited the following testimony from United States Border Patrol (USBP) Agent, Jose Gonzales:

On March 5, 2021, Defendant entered the United States Border Patrol checkpoint located on Highway 70 west of Alamogordo, New Mexico, driving a Mazda CX-9 sport utility vehicle. Government Exhibits 1, 2, & 3.  USBP Agent Jose Gonzalez was conducting primary inspection duties and observed the vehicle enter the checkpoint in the traffic lane, roll past the stop sign, and stop.  As Agent Gonzalez approached the vehicle from behind, he noticed "shadows" in the

rear area of the vehicle.  He asked Defendant if he is a United States citizen, noting Defendant only "cracked" open the window.  Defendant did not respond, instead looking ahead.  Agent Gonzalez repeated the question and Defendant then turned to a female seated in the front passenger seat, who answered, "No."  While this exchange was occurring, Agent Gonzalez noticed "a lot of people" in the back of the vehicle; "hunching" in the middle seat area, "sideways" and "trying to hide."  Agent Gonzalez could not ascertain the number of people because he could not see heads, noticing only bodies and feet on bodies of people.

Agent Gonzales instructed Defendant to put the vehicle in Park and to step out. Defendant was escorted into the checkpoint where he was advised of and waived his *Miranda* rights. When questioned, Defendant stated he was to be paid $500 to transport the immigrants from Arizona and that he knew they were undocumented.  He further stated he was to receive more instructions when he entered New Mexico.

 All the passengers were determined to be undocumented immigrants.  Agent Gonzalez ultimately determined there were six people crowded into the middle seat area and three more people in the rear cargo area of the vehicle.  He also could not recollect any passengers were seat belted but noted that the middle seating area could accommodate three people and that the cargo area was "small" and approximately six square feet in area.  He testified that when he first observed the people crowded in the vehicle, he was concerned the people could not breathe.

The Court finds Agent Gonzalez's testimony credible.

As a result, Defendant was charged with violating 8 U.S.C. §§ 1324(a)(1)B)(i) and 1324(a)(1)(A)(ii), conspiracy to transport an illegal alien, and entered a guilty plea to that charge.

II.     *Recommended Sentencing Guideline Calculation*

The PSR (Doc. 24) was completed and disclosed to the parties, describing the

recommended application of the Sentencing Guidelines.  Specifically, the PSR outlines a Base

Offense Level 12, pursuant to § 2L1.1(a)(3); an upward 3-level adjustment pursuant to §

2L1.1(b)(2)(A), based on the number of immigrants (9); an upward 3-level adjustment pursuant

§ 2L1.1(b)(6), based on intentionally or recklessly creating a substantial risk of death or serious

bodily injury to another; a downward 2-level adjustment because of Defendant's Minor role,

pursuant to § 3B1.2(b); and a total 3-level downward adjustment for accepting responsibility for

the offense, pursuant to § 3E1.1(a) and (b).  The Total Offense Level is 13, which, when

combined with Defendant's criminal history category I, results in an advisory Sentencing

Guideline range of 12-18 months.  Defendant objects only to the recommended application of §

2L1.1(b)(6).

III.    *Analysis*

Defendant asserts the evidence does not reflect that the passengers in the Mazda SUV

were in a crowded, dangerous, or inhumane condition.  He further asserts the vehicle is a 7-

passenger vehicle with a payload of 1503 pounds; that neither the weight of the passengers "nor

that the passengers substantially exceeded the rated capacity of the vehicle;" that none of the

passengers were found in the engine compartment or in the trunk (because the vehicle does not

have a trunk).  Defendant distinguishes this vehicle and these circumstances from other cases in

which undocumented immigrants were transported in a pickup truck, including those crammed

into a cab and in an open bed.  He points to Agent Gonzales's testimony that Defendant was not

observed driving dangerously as he drove into the checkpoint and, based on the totality of

circumstances, there is no evidence he intentionally created a *substantial* risk of death or serious bodily injury.

Section 2L1.1(b)(6) of the advisory Guidelines provides, "If the offense involved intentionally *or recklessly* creating a substantial risk of death or serious bodily injury to another person, increase [offense level] by 2 levels, but if the resulting offense level is less than level 18, increase to level 18."  (emphasis added).  The application note to § 2L1.1(b)(6, suggests, "[r]eckless conduct to which the adjustment [ ] applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel; harboring persons in a crowded dangerous, or inhumane condition, . . . .)."  This list of examples and circumstances is non-exhaustive.

The Court concludes, even assuming Defendant did not intend to create a substantial risk of death or serious bodily injury, he did so recklessly.  Indeed, the number of passengers and the manner in which they were being transported was dangerous.  While the vehicle may have had a passenger capacity of seven (driver, front passenger, three middle seat passengers and two rear seat passengers), the evidence is that the rear area was, in this particular vehicle, for "cargo."  In other words, there were not passenger seats in the rear.  On March 5, 2021, regardless of the design capacity, this vehicle had seating for five occupants (driver, front passenger, and three middle occupants).

Nevertheless, to the extent the vehicle may have been designed for seven, the actual number of occupants here and the manner in which they were crowded created a substantial risk. Agent Gonzales observed crowded bodies, no visible heads but only feet on top of bodies and was concerned the individuals could not breath.  The maximum number of passengers who could

possibly be seat-belted in the middle and rear areas was three but the actual number of people (9) substantially exceeded that safe capacity.  A common-sense inference here is that any of these immigrants were at risk of death or serious bodily injury had a crash or collision occurred, even by accident.  The fact that this vehicle was a mid-size sport utility vehicle and not a pickup truck or has not trunk is not at all determinative.  *See e.g.*, *United States v. Munoz-Tello*, 531 F.3d 1174 (10th Cir. 2008) (affirming application of Section 2L1.1(b)(6) for transporting eleven immigrants in Suburban designed for eight adults and not enough seatbelts).

Defendant also points to Agent Gonzalez's testimony that Defendant was not driving in an unsafe manner, speeding, or fleeing from law enforcement such that a spike strip would be necessary to stop the vehicle.  This Court agrees with the Honorable William Johnson's reasoning to reject a similar argument: "While fleeing from the police or harming aliens may certainly qualify as reckless endangerment under the statute, a lack of this conduct does not preclude § 2L1.1(b)(6)'s applicability."  *United States v. Moroyoqui-Alamea*, 524 F. Supp. 3d 1133, 1137 (D.N.M. 2021).

Moreover, this Court is not persuaded the evidence in this case does not rise to a "substantial" risk, as contemplated by § 2L1.1(b)(6).  The evidence includes that, in addition to Defendant and a front seat passenger, nine other people were crowded into the rear seating and cargo area, designed at best for five but in actuality, for only three, because the rear area was set for cargo and not passengers.  The manner in which these people were crowded, some seated and others hunched and sideways, and whose feet were visible on top of bodies, was risky.  This was not a slight risk.  *Cf. United States v. Solis-Garcia*, 420 F.3d 511 (5th Cir. 2005).

*IV.*     *Conclusion*

For these reasons, and for those stated on the record, the Court finds and concludes the application of § 2L1.1(b)(6) is correct and confirms its oral ruling at the sentencing hearing overruling Defendant's objection.

IT IS, THEREFORE, ORDERED that Defendant's objection to the recommended application of U.S.S.G. § 2L1.1(b)(6) is overruled.

_____
UNITED STATES DISTRICT JUDGE